PREMIER INVESTMENTS, Appellant
(Cross-claimant Below),

v.

SUITES OF AMERICA, INC., Appellee.
(Cross-claim Defendant Below).

No. 49S02–9412–CV–1217.

Supreme Court of Indiana.

Dec. 15, 1994.

Bradley W. Skolnik, Robert M. Messick, Freihofer, Minton, Keeler & McClamroch, Indianapolis, for appellant.

Mark R. Wenzel, Richard E. Shevitz, Hopper, Wenzel & Galliher, P.C., Indianapolis, for appellee.

### ON PETITION TO TRANSFER

SULLIVAN, Justice.

We hold that the benefits of Indiana's mechanic's lien statutes cannot be invoked by a real estate developer performing supervisory services but not physical labor, particularly a developer who is an equity participant in the project. We therefore vacate the holding of the Court of Appeals, *Premier Investments v. Suites of America* (1994), Ind.App., 630 N.E.2d 232, and affirm the decision of the trial court in this case.

*Facts*

On February 6, 1989, developer Premier Investments, a general partnership, and Howard Johnson Franchise Systems, Inc., entered into a contract entitled "Hotel Development Agreement." Pursuant to the contract, developer agreed to develop certain real estate in the Keystone at the Crossing area of Indianapolis into an "AmeriSuite Hotel." The contract required developer to de-

velop plans, specifications and construction budgets, and otherwise to be responsible for the construction, equipping, staffing, and opening of the hotel. It was, in the vernacular, a "turn-key" arrangement where developer, using financing provided by the owner, would deliver to the owner a completed hotel ready to turn the key and begin business.

The contract provided that the developer was entitled to a development fee equal to 5% of the hard construction costs of the project plus certain out-of-pocket expenses. In addition to the development fee, the contract provided that the developer was entitled to receive 25% of the profits derived from the operation of the hotel or from its sale or refinancing.

In connection with its responsibilities to supervise construction of the hotel, the contract required that each construction contract with a general contractor or sub-contractor contain a provision prohibiting the contractor or sub-contractor from filing mechanic's liens, that the developer have any mechanic's lien filings discharged as soon as practicable, that the developer make no payments to any contractor or sub-contractor maintaining a mechanic's lien filing, and that each request for payment submitted to the owner contain a certification from each contractor and sub-contractor that there were no known mechanic's liens outstanding.

Developer began developing the property in 1989. Developer describes its efforts under the contract as follows:

> [Developer] Premier proceeded to get the Real Estate under Contract so it could be purchased. It designed the building that was to be built on the Real Estate. It obtained the necessary zoning and building approvals. It bid the project and hired the general contractor. It monitored the construction on a day-to-day basis. It handled the construction draws to make sure the owner was not paying for any materials that were not on site and that the materials on site were to be used in construction of the hotel. It coordinated with the architects, recommended and authorized design and construction changes.

Brief of Appellant in the Court of Appeals at 6.

On July 10, 1990, ownership of the property was conveyed from Howard Johnson Franchise Systems, Inc., to Fairfield Development IV, Inc. Developer continued to perform its responsibilities under the contract until August 10, 1990, when Fairfield directed developer to suspend construction at the hotel site.

On September 18, 1990, Fairfield filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Florida. On October 8, 1990, developer filed a Sworn Statement and Notice of Intention to Hold Mechanic's Lien. On January 25, 1991, the Bankruptcy Court conveyed ownership of the property to Suites of America, Inc., "free and clear of all liens and encumbrances except all liens existing by operation of state statutory law."

On August 5, 1991, the general contractor, filed a Complaint to Foreclose Mechanic's Lien that named developer and the new owner of the property, Suites of America, Inc., as defendants. Along with its answer, developer filed a cross-claim against the new owner in which it claimed to have a valid mechanic's lien against the property pursuant to Indiana Code Annotated § 32–8–3–1 (West 1979). In response, owner filed a Motion for Partial Summary Judgment contending that developer did not have a valid mechanic's lien.

The trial court granted owner's motion, finding that developer's mechanic's lien was void as a matter of law. The Court of Appeals reversed the trial court, *Premier Investments*, 630 N.E.2d at 233, holding that: (1) the activities that developer engaged in were "labor" within the meaning of the mechanic's lien statute and were lienable under the statute, concluding that there was no meaningful distinction between the supervisory services performed by developer and the physical labor performed by contractors and subcontractors, *id.* at 238; and (2) developer's agreement to use no lien contracts with third party contractors did not estop it from later seeking to use a mechanic's lien on its own behalf because developer's agreement regarding no lien contracts applied only to contracts between itself and third party con-

tractors and not to the contract between developer and owner. *Id.* at 239.

Owner, Suites of America, Inc., seeks transfer asserting that: (1) the Court of Appeals' extension of the coverage of the Indiana mechanic's lien statute to apply to developers like Premier violates fundamental rules of statutory construction and allows entities in developer's position to reduce significantly the proceeds available to contractors, subcontractors and other persons specifically covered by the mechanic's lien statute, and (2) the Court of Appeals erred in holding that developer is not estopped from asserting a mechanic's lien. Because we agree with owner that developer in this case is not entitled to a mechanic's lien for its services, we grant transfer, vacate the decision of the Court of Appeals, and affirm the decision of the trial court granting partial summary judgment for owner, Suites of America, Inc. Ind.Appellate Rule 11(B)(3).

*Discussion*

I

This case is an appeal from a grant of a motion for partial summary judgment on the issue of whether developer holds a valid mechanic's lien. On review, this Court faces the same issues that were before the trial court and follows the same process as the trial court. *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 365. Thus, summary judgment is appropriate only where there is no

genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C). No material facts appear to be at issue here and so we proceed to resolve the issue of law presented. As the Court of Appeals concluded, "The issue presented herein requires an evaluation of how the law applies to undisputed facts." *Premier Investments*, 630 N.E.2d at 234.

II

A mechanic's lien was a remedy unknown at common law[1] and is purely a statutory creation. *Potter Mfg. Co. v. A.B. Meyer & Co.* (1909), 171 Ind. 513, 516, 86 N.E. 837, 838. Provisions relating to the creation, existence or persons entitled to claim a mechanic's lien are to be narrowly construed since the lien rights created are in derogation of common law. *Puritan Eng'g Corp. v. Robinson* (1934), 207 Ind. 58, 60, 191 N.E. 141, 142. Because the mechanic's lien is purely a creature of statute, the burden is on the party asserting the lien to bring itself clearly within the strictures of the statute. *Id.* Thus, developer must show that under a proper construction of the Indiana mechanic's lien statute a real estate developer acting as developer did in this case, *to wit*, employed solely to supervise the construction of a building, may acquire a mechanic's lien.

In Indiana Code Annotated §§ 32-8-3-1[2] and 32-8-25-1[3] (West 1979), the legis-

---

1. Mechanic's liens apparently originated in this country in connection with the construction of the U.S. Capitol.

   The concept of a mechanic's lien was first introduced in the United States in 1791. In preparation of our nation's first capital building, Thomas Jefferson, James Madison, and others argued before the Maryland legislature that construction could be encouraged by providing persons involved in the building trades with some security that they would receive payment for their work. They suggested the creation of a lien. The Maryland General Assembly reacted favorably to this concept and on December 19, 1791 enacted the first mechanic's lien law.

   Jonathan E. Strassberg, *Priorities and Statutory Construction: Mechanic's Liens in New York*, 7 Cardozo L. Rev. 585, 587 (1986).

2. Indiana Code § 32-8-3-1 provides in relevant part:

   That contractors, subcontractors, mechanics, lessors leasing construction and other equipment and tools, whether or not an operator is

   also provided by the lessor, journeymen, laborers and all other persons performing labor or furnishing materials or machinery, including the leasing of equipment or tools used, for the erection, altering, repairing or removing any house, mill, manufactory or other building ... may have a lien separately or jointly upon the house, mill, manufactory or other building ... which they may have erected, altered, repaired, moved or removed or for which they may have furnished materials or machinery of any description, and, on the interest of the owner of the lot or parcel of land on which it stands or with which it is connected to the extent of the value of any labor done, material furnished, or either, ...; and should the person, firm, or corporation be in failing circumstances the above-mentioned claims shall be preferred debts whether claim or notice of lien has been filed or not.

3. Indiana Code § 32-8-25-1 extends the foregoing benefits to "registered professional engi-

lature expressly sets forth those persons entitled to mechanic's liens. These persons are: contractors; subcontractors; mechanics; lessors leasing construction equipment; journeymen; laborers and all other persons performing labor or furnishing materials or machinery, including the leasing of equipment or tools; registered professional engineers; registered land surveyors; and registered architects. We conclude, and developer does not dispute, that the lists in these two statutes are exclusive, *i.e.*, unless developer falls within one or more of these listed categories, it is not entitled to the benefits of the mechanic's lien statute.

■ Developer contends that it falls within the statutory meaning of "contractor" and, apparently, within the meaning of "laborer" by virtue of its responsibilities to supervise labor.

■ Developer's contention that it is a "contractor" is based simply on the fact that it has a contract with the owner. This argument was not made in the Court of Appeals and we reject it here. It has long been the law in Indiana that a "contractor" as the term is used in the mechanic's lien statute is a person who contracts to erect or construct a building, structure or other improvement. *Wood v. Isgrigg Lumber Co.* (1919), 71 Ind. App. 64, 68, 123 N.E. 702, 703. Indeed, the statute so provides. Ind.Code § 32–8–3–1. While there is a paucity of Indiana case law about what "to erect" means for purposes of the mechanic's lien statute, the law from other jurisdictions is replete with instances in which "to erect" has been found to connote some physical act of labor which improves land. *See, e.g., Albert Gall Co. v. Dowagiac Gas Co.*, 160 Mich. 255, 125 N.W. 283, 284 (1910) (paper hanging and decoration of

wall); *Reid v. Berry*, 178 Mass. 260, 59 N.E. 760 (1901) (grading reasonably necessary to the proper construction of a house); *Baker v. Waldron*, 42 A. 225, 226 (Me.1898) (laying the foundation where construction proceeded no further); *Vilas v. McDonough Mfg. Co.*, 91 Wis. 607, 65 N.W. 488, 489 (1895) (installing fixtures in a building). We see no reason not to use this definition. Thus, we conclude that the erecting requirement of Indiana Code § 32–8–3–1 is some physical act of labor in connection with the creation of a structure or improvement on land. It follows that a contractor is within the statute only if the contractor has used some physical act of labor in connection with the creation of a structure or improvement on land. Because developer here provided real estate development services in a supervisory capacity and not physical labor to erect the hotel, developer is not a "contractor" as the term is used in Indiana Code § 32–8–3–1.[4]

■ The Court of Appeals agreed with developer's contention that it provided labor within the meaning of the mechanic's lien statute, relying primarily upon two cases from the Indiana Court of Appeals, *Beeson v. Overpeck* (1942), 112 Ind.App. 195, 44 N.E.2d 195, and *Marcisz v. Osborne* (1954), 124 Ind. App. 574, 580, 118 N.E.2d 378, 380.

In *Beeson* the court held that an architect's services were lienable because they constituted labor. Quoting with approval from a Virginia decision construing a statute similar to ours, the court said:

> The language of our statute is general in its terms, and, in our opinion, embraces all persons who perform 'any labor.' We are unable to draw the distinction between one who puts his labor into plans for the erection of a building and actually supervises

neers, registered land surveyors and registered architects." It provides:

> Registered professional engineers, registered land surveyors and registered architects as now or hereafter defined by law shall have the right to secure and enforce the same lien that is now given to contractors, subcontractors, mechanics, journeymen, laborers and materialmen under and pursuant to the provisions of chapter 116, Acts of the general assembly of the state of Indiana 1909, approved March 6th,

1909, entitled "An act concerning liens of mechanics, laborers, journeymen, contractors and subcontractors and materialmen, and declaring an emergency," and any acts amendatory or supplemental thereof. Such lien may be secured and enforced in the same manner as mechanic's liens are secured and enforced.

4. Developer's reliance on *Mann v. Schnarr* (1950), 228 Ind. 654, 95 N.E.2d 138 to support its contention that it is entitled to a mechanic's lien is misplaced for reasons discussed *infra*.

its erection, and one who in the role of a bricklayer or carpenter actually performs a manual service.

*Beeson,* 112 Ind.App. at 199, 44 N.E.2d at 197 (quoting *Cain v. Rea,* 159 Va. 446, 166 S.E. 478, 480 (1932)).

In *Marcisz,* the court observed:

It is generally held that enforcement of a claim for supervisory labor in the construction of property is permitted under mechanic's lien statutes in most jurisdictions, 60 A.L.R. 1274, and Indiana follows the majority rule in this regard. *Mann v. Schnarr,* 1950, 228 Ind. 654, 95 N.E.2d 138, 142. The reasoning of the court in the foregoing case is that 'one who labors with body or mind, or both, is a laborer' and held that an architect who drew plans and specifications and did supervision of the construction was a laborer under the lien statute.

*Marcisz,* 124 Ind.App. at 580, 118 N.E.2d at 380.

While both of these cases appear to support developer's position, we decline to follow them. First and foremost, we find them in conflict with our own opinion in *Ward v. Yarnelle* (1910), 173 Ind. 535, 91 N.E. 7, which was not discussed by the Court of Appeals in its opinion. Ellsworth Ward was the president of the property owner's board of directors. Ward superintended the development and construction of a building and also performed some unrelated work as a general contractor. In rejecting Ward's claim that his superintendence contract gave rise to a mechanic's lien, we said:

Ward's contract with the association was "to superintend the construction of the building" ... [t]he evidence is wholly silent as to the character of his duties, or of the work done by him, or that he did any work other than such as the word "superintend" implies, so that he does not make it appear that he comes within the class to whom the statute gives a lien as a laborer.

*Ward,* 173 Ind. at 562, 91 N.E. at 18.[5]

Second, we believe that both *Beeson* and *Marcisz* are highly distinguishable from the case before us. As noted, *Beeson* involved not a claim for supervisory services but for architectural services. The legislature subsequently addressed this issue when it enacted the statute making architectural services lienable in 1945.[6] To the extent *Beeson* mentions supervisory services, then, it is only *dicta.* In *Marcisz,* the court relied on *Mann v. Schnarr* (1950), 228 Ind. 654, 95 N.E.2d 138. In *Mann,* a contractor agreed to provide materials, labor, and supervisory services for the construction of a building pursuant to a "cost plus" contract which entitled him to payment for "materials and labor plus ten percent (10%) thereof." *Mann,* 228 Ind. at 661, 95 N.E.2d at 140. When payment due was not timely made, the contractor asserted a mechanic's lien. *Id.* In determining which costs the contractor incurred in erecting the building were lienable, we indicated that where a contractor provides labor, materials, and supervisory services, these supervisory services are inexorably tied to the labor and materials provided and are therefore lienable. *Mann,* 228 Ind. at 666, 95 N.E.2d at 142. Consistent with our formulation above, physical labor to erect a structure

---

**5.** Developer contends that we should disregard *Ward* because it was overruled by *Moore–Mansfield Constr. Co. v. Indianapolis, New Castle & Toledo Ry.* (1913), 179 Ind. 356, 101 N.E. 296. Developer refers to a passage in *Moore–Mansfield* overruling "the case of *Indianapolis, etc., Traction Co. v. Brennan* [ (1910), 174 Ind. 1, 87 N.E. 215,] ... and the subsequently determined cases following it;" *Ward* is specifically mentioned in *Moore–Mansfield* as one of the cases following *Brennan. Moore–Mansfield,* 179 Ind. at 391, 101 N.E. at 309.

However, the issue on which *Moore–Mansfield* overruled *Ward* is not the issue for which we rely on *Ward* today, *i.e.,* that Ward's supervisory labor was not lienable. Rather, another party in *Ward,* Harris Construction Company, also sought to

assert a mechanics lien. In *Ward,* this claim was rejected because *Brennan* had held that a construction company could not acquire a lien. *Ward,* 173 Ind. at 560, 91 N.E. at 17. It was that holding of *Ward* alone that was overruled by *Moore–Mansfield.* 179 Ind. at 391, 101 N.E. at 309. We note that this holding makes *Moore–Mansfield* an extremely important case, overruling as it did a black-letter principle of mechanics' lien law: "The right conferred by a lien in favor of laborers is personal, and cannot be availed of by one who furnishes labor." *Moore–Mansfield,* 179 Ind. at 379, 101 N.E. at 305. But it is not relevant to the case before us.

**6.** Now Ind.Code § 32–8–25–1.

or improvement on land occurred. This case is different from *Mann,* however, because developer in this case, unlike the contractor in *Mann,* provided only supervisory services, not physical labor.

We conclude that the statute must be narrowly construed in determining those persons entitled to its protection. *Puritan Eng'g,* 207 Ind. at 60, 191 N.E. at 141. If the legislature intends that developers in the same position as Premier Investments in this case are entitled to a mechanic's lien for their services, it must expressly so provide.

### III

Even if the statutory construction issue were not so clear, we likely would be unwilling to extend the benefits of the mechanic's lien statutes for supervisory services (except as provided in *Mann v. Schnarr, supra*) to persons similarly situated to developer here.

The historical origin and purpose of mechanic's lien statutes was to make a property owner an involuntary guarantor of payments for the reasonable value of improvements made to real estate by the physical labor or materials furnished by laborers or materialmen. *See* Charles E. Goulden & Larry Braxton Dent, *More on Mechanic's Liens, Stop Notices and the Like,* 54 Cal. L.Rev. 179, 180 (1966). Thus, the purpose of mechanic's lien laws is to prevent the inequity of a property owner enjoying the benefits of the labor and materials furnished by others without recompense. *Moore–Mansfield Constr. Co. v. Indianapolis, Newcastle and Toledo Ry. Co.* (1913), 179 Ind. 356, 390, 101 N.E. 296, 309. When manual laborers and materialmen furnish labor and materials and do not get paid, their recourse as unsecured creditors is minimal. And as a class, they are often poorly equipped to discover the prospective insolvency of an employer.

We see this history as providing a sort of rough dividing line. Clearly on the owner's side of the line are those who enjoy the benefits of the labor and materials supplied by others. Clearly on the other side of the line are those specific categories of persons who actually supply labor and materials and who have been listed in the statute. And there are at least two aspects of the developer's relationship with the owner here that indicate clearly to us that this developer is on the owner's side of the line and should not be entitled to the benefits of the mechanic's lien statute.

First, the owner of this project made it very clear that the entire project was to be conducted in such a way as to avoid any mechanic's liens being placed on the property. No-lien contracts were required with sub-contractors. Lien waivers were required before draws. Every protection permitted by law from mechanics' lien encumbrances was insisted upon by the owner and, in all likelihood, the mortgage lender at the outset of the project. Developer contends that it was not subject to these restrictions to show that there was no impediment to its asserting a lien. But we believe that the fact that such restrictions were not applied to developer when they were applied to every other person connected with the project deemed to be a "contractor" is, rather, a clear indication that the parties recognized that the mechanic's lien statute was not available to developer. More succinctly, given the way this financial transaction was documented, if there had been any question that the mechanics' lien statute was available to developer, we are confident that lien waivers would have been required of it as well.

Second, developer here was an equity participant in the deal. Premier Investment's investment (or risk) was essentially the value of its supervisory services. That investment entitled the developer to a development fee and a 25% position in both the operating profits and any gain from the sale or refinancing of the project. Developer clearly anticipated at the outset of the project that it would be in the class of those who would "enjoy[ ] the fruits of the labor and materials furnished by others." *Moore–Mansfield,* 179 Ind. at 372, 101 N.E. at 302. Though not a title-holder, developer's equity participation here clearly places it on the owner's side of the line.

To hold otherwise, we think, would have untenable results for both true mechan-

ics and creditors whose liens are junior to those of mechanics. Holders of properly recorded mechanic's liens have no priority as to each other and share pro rata in the proceeds of the subject property. Ind.Code Ann. § 32–8–3–5 (West 1979). Thus, if a mechanic's lien were recognized here, the amount of money available to satisfy the liens of those persons the statute is expressly designed to protect (contractors, subcontractors, laborers, and materialmen) would be reduced. This conflicts with the core function of mechanic's lien statutes' providing a method for contractors, subcontractors, laborers, and materialmen who have increased the value of a property owner's land and not been paid to obtain remuneration. *Moore–Mansfield,* 179 Ind. at 390, 101 N.E. at 30; *Ward,* 173 Ind. at 562, 91 N.E. at 18. And this could also have the result of vaulting an essentially equity stakeholder into a position of parity or even superiority to a project's secured lenders. *See Beneficial Finance Co. v. Wegmiller Bender Lumber Co.* (1980), Ind. App., 402 N.E.2d 41, 47.

### Conclusion

Developer has no lienable claim under Indiana Code § 32–8–3–1 for purely supervisory services. Accordingly, the Court of Appeals' decision is vacated. We affirm the trial court's entry of partial summary judgment in favor of owner Suites of America, Inc.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.