**In re GREENLAND HOMES, INC., Debtor.**

**GREENLAND HOMES, INC., Plaintiff,**

v.

**E & S MARKETING RESOURCES, INC., Defendant.**

**Bankruptcy No. 97–10337–RLB–11.
Adversary No. 97–438.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

Sept. 16, 1998.

Timothy L. Black, Hostetler & Kowalik, Indianapolis, IN, for Plaintiff/Debtor.

Robert A. Howard, Howard & Stoehr, Indianapolis, IN, for Defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ENTRY ON COMPLAINT TO DETERMINE VALIDITY, PRIORITY AND EXTENT OF LIEN

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the Court on the Complaint to Determine Validity, Priority and Extent of Lien on Property, for Slander of Title, for Abuse of Process, and for Malicious Prosecution ("Complaint"), filed by Greenland Homes, Inc. (the "Debtor") on October 21, 1997. E & S Marketing Resources, Inc. (the "Creditor") filed an answer ("Answer") to the Complaint on January 12, 1998. A trial on the Complaint was held on July 22, 1998. The Court, having considered the Complaint, the Answer, the matters presented at the July 22, 1998 trial, and the parties' post-trial briefs, and pursuant to Federal Rule of Civil Procedure 52 and Bankruptcy Rule 7052, now makes its

*Findings of Fact*

1. The Debtor filed a petition under Chapter 11 on September 8, 1997. The Debtor is in the business of building houses for individuals, and has continued to conduct its business as a debtor in possession since the filing of the bankruptcy petition.

2. The Creditor is in the business of providing advertising services and materials to businesses such as the Debtor.

3. Several months prior to the Debtor's bankruptcy filing, the Debtor and the Creditor entered into a contract (the "Contract"), pursuant to which the Creditor agreed to supply the Debtor with signs, camera art, site maps, displays and various other advertising materials (the "Advertising Work"). The materials were to be used by the Debtor to market the houses that the Debtor was building in five different subdivisions. The five subdivisions covered by the Contract are Indigo Lakes, located in Fishers; Oak Commons, located in Greenfield; McKenzie Place, located in Greenfield; Whittington Village, located in Brownsburg; and Waterford Crossing (also referred to by the parties as "Shannon Lakes"), located on the south side of Indianapolis.

4. The Creditor began the Advertising Work in April of 1997, and continued the work through August of 1997. To date, the Debtor has not paid the Creditor for any of the work done pursuant to the Contract.

5. On September 3, 1997, the Creditor filed a notice of intent to hold mechanic's lien ("Notice of Intent") with the Office of the Recorder of Marion County, Indiana. *See* Plaintiff's Exhibit "C". The lots described in the Notice of Intent are five lots located in the Debtor's Waterford Crossing subdivision (the "Five Waterford Lots"). The Notice of

Intent asserts that the Creditor is owed a debt in the amount of $68,753.73 for the following work:

> for work, labor and materials furnished by Claimant for improvements of said real estate within the last sixty (60) days, which improvements are more specifically described as follows: Signs, camera art, site maps, displays and various advertising items.

6. The labor and materials that the Creditor supplied to the Debtor in performing the Advertising Work, were furnished for general sales and marketing purposes. None of the work done by the Creditor, and none of the materials that were supplied to the Debtor, were used in the construction of a house or building on any of the Five Waterford Lots. The Creditor did not perform any physical act of labor in connection with the construction of any house or building on any of the Five Waterford Lots.[1]

7. The $68,753.73 debt described in the Notice of Intent is for Advertising Work that the Creditor performed in relation to all five of the Debtor's subdivisions.

8. Prior to the filing of the instant adversary proceeding, the parties engaged in negotiations regarding the release of the Creditor's lien on the Five Waterford Lots. *See* Plaintiff's Exhibit A and Defendant's Exhibit 2. To date, the Five Waterford Lots remain encumbered by the Creditor's lien.

The Court, based on the foregoing Findings of Fact, now makes its

*Conclusions of Law*

1. The Court has jurisdiction to decide this matter. 28 U.S.C. Section 1334, 28 U.S.C. Section 157.

---

1. The Court was presented with conflicting evidence as to whether any of the signs that were erected in the Waterford Crossing subdivision, were located on the Five Waterford Lots. The three witnesses for the Creditor could not say for certain where the signs were located. At best, their testimony established that a sign was erected in Waterford Crossing on the lot on which a model was to be built. The Court was not provided with a map from which it might discern whether the lot on which a model was to be built, was one of the lots on which the Creditor

placed its lien, *i.e.*, lots 172, 184, 190, 207, and 212. *See* Plaintiff's Exhibit C. Accordingly, the Court must assume that none of the signs that were erected in the Waterford Crossing subdivision, were erected on the Five Waterford Lots.

Even assuming, *arguendo*, that one of the signs was erected on one of the Five Waterford Lots, it does not change the Court's opinion as to whether the work performed and materials provided were covered by the Indiana mechanic's lien statute. *See* Conclusions of Law 1 *et seq.*, set out hereinbelow.

2. In the Complaint, the Debtor makes several allegations concerning the mechanic's lien (the "Mechanic's Lien") that resulted from the filing of the Creditor's Notice of Intent. The Debtor alleges that the Mechanic's Lien is not valid because the type of work that was performed by the Creditor is not covered by the Indiana mechanic's lien statute, and because the Creditor is not within the categories of persons intended to be protected by the Indiana mechanic's lien statute. The Debtor alleges that the Creditor's Mechanic's Lien is invalid, and that the filing of the Notice of Intent by the Creditor constituted slander of title, malicious prosecution, and abuse of process. The Creditor asserts that the work it performed was covered and protected by the Indiana mechanic's lien statute, as the work added value to and made an improvement to the Debtor's real estate. The Creditor cites *Haimbaugh Landscaping, Inc. v. Jegen*, 653 N.E.2d 95 (Ind.App.1995), in support of its argument.

3. At the July 22, 1998 trial, after presentation of the Debtor's case in chief, the Creditor moved to dismiss all four counts of the Debtor's Complaint. The Court took the Creditor's motion to dismiss under advisement, and ruled that the parties should go forward with the presentation of evidence. In its opinion today, the Court addresses the following issues raised by the Complaint, the Creditor's response to the Complaint, and the Creditor's motion to dismiss:

a) Did the Creditor perform work or furnish materials that resulted in an improvement to the Debtor's real estate that is protected by the Indiana mechanic's lien statute?

b) Is the Creditor within the categories of persons intended to be protected by the Indiana mechanic's lien statute?

c) Was it correct to file a lien for the entire $68,753.73 debt owed, against the Five Waterford Lots?

d) Did the filing of the Notice of Intent by the Creditor, and subsequent refusal to release the Mechanic's Lien, constitute slander of title, malicious prosecution, and abuse of process?

*Did the Creditor Perform Work or Furnish Materials That Resulted in an Improvement to the Debtor's Real Estate, that is Protected by the Indiana Mechanic's Lien Statute*

4. The Indiana mechanic's lien statute (the "Mechanic's Lien Statute") is found at Indiana Code Section 32–8–3–1, and provides in relevant part as follows:

That contractors, subcontractors, mechanics, lessors leasing construction and other equipment and tools ... journeymen, laborers and all other persons performing labor or furnishing materials or machinery ... for the erection, altering, repairing or removing any house ... may have a lien separately or jointly upon the house ... which they may have erected, altered, repaired, moved or removed or for which they may have furnished materials or machinery of any description, and, on the interest of the owner of the lot or parcel of land on which it stands ... to the extent of the value of any labor done, material furnished, or either ....

Indiana Code Section 32–8–3–1.

5. The Mechanic's Lien Statute provides that a party who "performs [labor or furnishes] materials" for the "erection, altering, repairing or removing [of] any house" may have a lien on the house, and on the land on which the house stands. The Mechanic's Lien Statute refers only to "structures", and does not include any reference to "improvements" (such as the Creditor would have the signs in issue here denominated). If the Court were to make a very narrow reading of the statute, the Court would conclude that because none of the Advertising Work included the act of "altering, repairing, or removing" a *structure*, the work done by the Creditor does not fall within the protection of the Mechanic's Lien Statute. Such a narrow reading has been rejected by both the Indiana Court of Appeals, and by the Indiana Supreme Court. In *Haimbaugh Landscaping, Inc. v. Jegen*, 653 N.E.2d 95 (Ind.App.1995), the Indiana Court of Appeals made the following statement:

[W]e are not convinced that the statute evinces an intent to include only those materials and/or services which are provid-

ed in conjunction with a project that either creates a statutorily specified structure, or one that creates some item that is necessary and essential to the functional use of such a structure.

*Jegen*, 653 N.E.2d at 101. The *Jegen* court continued its analysis with the following statement:

> While I.C. 32–8–3–1 does not specifically make lienable work which creates an 'improvement' upon land or work that 'improves' land, our Supreme Court recently concluded that 'the erecting requirement of Indiana Code [Section] 32–8–3–1 is some physical act of labor in connection with the creation of a structure or *improvement* on land'.... Such language convinces us that our Supreme Court has at least implicitly determined that projects involving physical labor supplied in connection with the 'creation of ...[an] improvement on land' are within the statute.

*Jegen*, 653 N.E.2d at 101–102 (citations omitted, emphasis original).

6. The Court, then, turns to an examination of Indiana case law to determine whether the "improvement" in issue here, *i.e.*, the Advertising Work performed by the Creditor pursuant to the Contract, is the type of work or "improvement" intended to be protected by the Mechanic's Lien Statute. In *Jegen*, the Indiana Court of Appeals held that a landscaper who provides ornamental and decorative landscaping to a homeowner, after the original construction of the house, may acquire a lien for the labor performed and materials supplied to the homeowner. In reaching its decision, the Court of Appeals focused on the nature of the work performed, and whether the work performed added value to, or in some way benefitted, the permanent structure. The Court of Appeals held that labor and materials are lienable where they are

> provided in conjunction with a project that creates an 'improvement' to a piece of real estate to which a structure is inextricably tied. Such an 'improvement' necessarily results in a valuable addition to the structure itself, and in that sense, the structure

undeniably benefits from the project which created the 'improvement'.

*Jegen*, 653 N.E.2d at 102.

7. In *Premier Investments v. Suites of America, Inc.*, 644 N.E.2d 124 (Ind.1994), the Supreme Court similarly focused on whether the work in issue created a structure or improvement on land.

> [T]he erecting requirement of Indiana Code [Section] 32–8–3–1 is some physical act of labor in connection with the creation of a structure or improvement on land. It follows that a contractor is within the statute only if the contractor has used some physical act of labor in connection with the creation of a structure or improvement on land.

*Premier*, 644 N.E.2d at 128 (holding that developer that provided real estate development services in a supervisory capacity, and not physical labor to erect a structure, was not protected by the Mechanic's Lien Statute).

8. Here, the Creditor argues that the signs it created and the work it performed added value to the Five Waterford Lots, because advertising always increases the sales price at which new houses can be sold. Assuming, *arguendo*, that the Advertising Work did raise the prices at which the Debtor could market its houses, under the analyses set out in *Jegen* and *Premier*, that fact is not enough to bring the Creditor's work within the protection of the Mechanic's Lien Statute. Unlike the landscaper in *Jegen* (whose work was deemed to be protected by the statute), the Contractor here did *not* create an "improvement" to land, that "necessarily result[ed] in a valuable addition to the structure itself". *Jegen*, 653 N.E.2d at 102. The Creditor did not build or repair any structure or permanent improvement on any of the Five Waterford Lots. Here, the advertising work the Creditor performed, including signs and art work, cannot be construed as an "improvement" to the real estate, as the advertising work is not a "valuable addition" that is "inextricably tied" to the real estate. *Jegen*, 653 N.E.2d at 102. In fact, the signs and art work add no permanent, intrinsic value to the real estate, or any structure thereon.

To the contrary, the signs will be removed, and the art work will be disposed of, once the Five Waterford Lots are sold. At most, the Creditor performed off-site work that increased the value of the Five Waterford Lots only indirectly, if at all. It would be mere speculation to determine the advertising value of the signs and art work performed by the Creditor. Increasing the price at which a house and lot can be sold, is not the same as increasing the value of the house and lot by adding a permanent improvement such as landscaping.

9. For all the foregoing reasons, it is the conclusion of the Court that the work performed by the Creditor does not fall within the protection of the Mechanic's Lien Statute.

### Is the Creditor Within the Categories of Persons Protected by the Indiana Mechanic's Lien Statute

10. The Mechanic's Lien Statute does not include definitions for the categories of persons enumerated therein, such as "contractors" and "laborers". The Court must turn to case law for a definition of the terms used in the Mechanic's Lien Statute.

■ 11. The Indiana Supreme Court has held that the Mechanic's Lien Statute is to be narrowly construed when determining the scope of persons entitled to acquire and enforce mechanic's liens.

> A mechanic's lien was a remedy unknown at common law and is purely a statutory creation. . . . Provisions relating to the creation, existence or persons entitled to claim a mechanic's lien are to be narrowly construed since the lien rights created are in derogation of common law. . . . Because the mechanic's lien is purely a creature of statute, the burden is on the party asserting the lien to bring itself clearly within the strictures of the statute.

*Premier Investments v. Suites of America, Inc.*, 644 N.E.2d 124, 127 (Ind.1994)(footnote and citations omitted).

**2.** Indiana Code Section 32–8–25–1 affords mechanic's lien rights to engineers, surveyors, and

■ 12. The categories listed in the Mechanic's Lien Statute are exclusive; if a lien claimant does not fall into one of the listed categories, the lien claimant is not entitled to the protection of the statute.

In Indiana Code Annotated [Sections] 32–8–3–1 and 32–8–25–1 (West 1979)[2], the legislature expressly sets forth those persons entitled to mechanic's liens. These persons are: contractors; subcontractors; mechanics; lessors leasing construction equipment; journeymen; laborers and all other persons performing labor or furnishing materials or machinery, including the leasing of equipment or tools; registered professional engineers; registered land surveyors; and registered architects. We conclude . . . that the lists in these two statutes are exclusive, *i.e.*, unless [the lien claimant] falls within one or more of these listed categories, it is not entitled to the benefits of the mechanic's lien statute.

*Premier*, 644 N.E.2d at 127–128 (footnotes omitted).

■ 13. Here, presumably, the Creditor would argue that it qualifies as a "contractor", "laborer", or a person "furnishing materials", as those terms are used in the Mechanic's Lien Statute. The Court turns first to the argument that the Creditor was a "contractor" vis-a-vis the Debtor and the Five Waterford Lots. The fact that the Debtor and the Creditor had a contractual relationship, standing alone, is not sufficient to bring the Creditor within the protection of the Mechanic's Lien Statute.

> Developer's contention that it is a 'contractor' is based simply on the fact that it has a contract with the owner. This argument was not made in the Court of Appeals and we reject it here. It has long been the law in Indiana that a 'contractor' as the term is used in the mechanic's lien statute is a person who contracts to erect or construct a building, structure or other improvement. . . . [W]e conclude that the erecting requirement of Indiana Code [Section] 32–8–3–1 is some physical act of labor in connection with the creation of a structure

architects, and is not in issue here.

or improvement on land. It follows that *a contractor is within the statute only if the contractor has used some physical act of labor in connection with the creation of a structure or improvement on land.*

*Premier,* 644 N.E.2d at 128 (citations omitted, emphasis added). Because the Creditor did not have a contract with the Debtor to build a structure or permanent improvement,[3] the Creditor is not a "contractor" as that term is used in the Mechanic's Lien Statute.

14. Presumably the Creditor would also argue that it is a "laborer" or a person "furnishing materials" vis-a-vis the Debtor and the Five Waterford Lots. It is beyond dispute that the Creditor performed some acts of physical labor when it prepared signs, camera art, site maps, and displays for the Debtor, and furnished some materials to the Debtor. The Mechanic's Lien Statute, however, does not merely require that a lien claimant perform acts of labor or furnish materials to come within the protections of the statute; the Mechanic's Lien Statute requires that a lien claimant perform acts of labor or furnish materials *"for the erection, altering, repairing or removing "* of a house or other structure. Indiana Code Section 32–8–3–1. The Mechanic's Lien Statute further provides that a lien claimant has a lien on the house which the claimant "erected, altered, repaired, moved, or removed". Indiana Code Section 32–8–3–1. Here the Creditor did not erect, alter, repair, move, or remove a structure or improvement on any of the Five Waterford Lots, and did not provide materials for the erection, alteration, repair, moving, or removing of a structure or improvement on any of the Five Waterford Lots. Accordingly, the Creditor is not a "laborer" or a person "furnishing materials", as those terms are used in the Mechanic's Lien Statute.

15. The Court's decision that the Creditor did not act as a "laborer" vis-a-vis the Debtor and the Five Waterford Lots, is supported by the decision of the Indiana Supreme Court in *Premier.* If the developer in *Premier,* who

located the site for the hotel, developed plans, specifications, and budgets, supervised construction, and equipped, staffed and opened the hotel, was not a "laborer", then surely here the Creditor should be deemed to similarly fall outside the protection of the Mechanic's Lien Statute.

16. For all the foregoing reasons, it is the conclusion of the Court that the Creditor does not fall within the categories of persons intended to be protected by the Mechanic's Lien Statute.

*Should the Lien Have Been Filed Against the Five Lots, for all the Work that the Creditor Performed in the Debtor's Five Subdivisions*

17. The Creditor's entitlement to its Mechanic's Lien is problematic for several more reasons. First, there is the fact that the Creditor placed a lien on the Five Waterford Lots for the *entire* amount due under the Contract, for *all* the work that was done on the Debtor's five subdivisions. The Creditor argues that because there was only *one* contract between the Debtor and the Creditor for all the work that was done, the Creditor was justified in placing its lien on the Five Waterford Lots (as opposed to placing its lien on all of the lots in all five of the subdivisions to which the work related). The evidence, however, points to the conclusion that there was more than one contract between the parties. At trial, the Creditor failed to introduce into evidence the alleged contract that covered all five subdivisions. Francine Bartfield testified that the price for the work to be done in each subdivision averaged approximately $12,000.00. The Indiana Court of Appeals has held that a mechanic's lien cannot be had on one structure or improvement, for work done or materials furnished for another structure or improvement. *Cato v. David Excavating Co., Inc.,* 435 N.E.2d 597 (Ind.App.1982), *overruled on different ground by Johnson v. Blankenship,* 688 N.E.2d 1250 (Ind.1997). Based on the evidence before the Court, and pursuant to the holding in *Cato,* the lien that

**3.** *See* Conclusions of Law 6, 7, and 8 hereinabove (finding that the Creditor did not make any "improvement" to the Five Waterford Lots, and therefore, is not entitled to the protection of the Mechanic's Lien Statute).

718

the Creditor placed on the Five Waterford Lots, should have been for no more than the approximately $12,000 of work that the Creditor performed in connection with the Waterford subdivision.

18. The facts also raise the issue of whether the Creditor's Notice of Intent was timely filed with respect to the Five Waterford Lots. *See* Indiana Code Section 32–8–3–3 (requiring that a mechanic's lien be filed within 60 days of the completion of work). The Creditor argues, once again, that there was only one contract between the parties, and that accordingly, as long as the last of the work done in any of the five subdivisions was completed within 60 days of the filing of the Notice of Intent, the Notice of Intent was timely filed. Based on the Court's above conclusion that there was a contract for each of the subdivisions, and on the fact that most of the work in the Waterford subdivision was completed more than 60 days prior to the filing of the Creditor's Notice of Intent,[4] the Court concludes that the Notice of Intent was not timely filed with respect to work completed prior to the first week of July, 1997.

*Did the Filing of the Notice of Intent Constitute Slander of Title, Malicious Prosecution, or Abuse of Process*

19. Having held that the Creditor's Mechanic Lien is invalid, the Court is faced with the question of whether the filing of the Notice of Intent, together with the Creditor's subsequent refusal to release its lien on the Debtor's property, constitutes slander of title, malicious prosecution, or abuse of process.

20. The Court first notes that the slander of title and malicious prosecution theories advanced by the Debtor require a showing of "malice" on the part of the unsuccessful lien claimant. The elements of slander of title have been described as follows:

4. A review of Plaintiff's Exhibits D through Z, and AA through OO, reveals that most of the work done in connection with Waterford Crossing, was completed by May of 1997. *See* Plaintiff's Exhibits E, F, H, and J. At least three pieces of work, totaling $4,702.50, were completed after the first week of July 1997, *see* Plaintiff's Exhibits

The essential elements of slander of title are that false statements were made *maliciously* and that the plaintiff sustained pecuniary loss as a necessary and proximate consequence of the slanderous statements.

*Lee & Mayfield, Inc. v. Lykowski House Moving Engineers, Inc.,* 489 N.E.2d 603, 608 (Ind.App.1986)(emphasis added). Where a plaintiff alleges malicious prosecution, he must prove that

the defendant instituted or caused to be instituted a prosecution against the plaintiff; the defendant acted with *malice* in doing so; the prosecution was instituted without probable cause; and the prosecution terminated in the plaintiff's favor.

*Display Fixtures Co. v. R.L. Hatcher, Inc.,* 438 N.E.2d 26, 30 (Ind.App.1982)(emphasis added).

21. The witnesses for the Creditor testified at trial that the Notice of Intent was filed in good faith, and was not filed for malicious purposes. Counsel for the Creditor stated at trial that the Notice of Intent was filed in good faith, and that because the Advertising Work added "value" to the Five Waterford Lots, the Creditor had a good faith argument that it was entitled to a mechanic's lien. Counsel for the Creditor pointed to the emphasis on "value" added to a structure or improvement, in the various decisions previously issued by the Indiana courts.

22. On balance, and having weighed the testimony of the witnesses, it is the conclusion of the Court that the Creditor did not act with malice in filing the Notice of Intent, and in refusing to release its Mechanic's Lien on the Debtor's property. The instant case raises an issue of law not previously addressed by the Indiana courts, and accordingly, it is appropriate to grant some leeway in judging the good faith of the Creditor's actions.[5]

Z, AA, and GG, and accordingly, were completed within 60 days of the filing of the Notice of Intent on September 3, 1997.

5. The court is mindful of the striking difference of opinion exhibited by the Indiana Court of Appeals and the Indiana Supreme Court, in de-

**719**

23. Where a mechanics lien claimant falls into a category of potential lien claimants not previously addressed by the Indiana courts, reasonable persons can differ in the legal conclusions that each draws from the facts. That is what happened here. The Court finds no malice on the Creditor's part in pursuing its arguments before this Court, and accordingly, finds that the Debtor is not entitled to damages under a slander of title or malicious prosecution theory.

24. The offense of abuse of process requires a finding of the following:

> Abuse of process requires a finding of misuse or misapplication of process, for an end other than that for which it was designed to accomplish. The purpose for which the process is used is the only thing of importance.

*Display,* 438 N.E.2d at 31. From the testimony at trial, the Court concludes that the Creditor filed its Notice of Intent for the exact reason envisioned by the drafters of the Mechanic's Lien Statute, *i.e.,* to increase the likelihood of the Creditor being paid for its work. The Court was presented with no evidence that the Creditor filed its Notice of Intent for a reason other than the obvious reason. *Compare Display Fixtures Co. v. R.L. Hatcher, Inc.,* 438 N.E.2d 26 (Ind.App.1982)(finding abuse of process where supplier of equipment to liquor store filed lien to induce landlord to pressure tenant-liquor store operator to pay debt to supplier).

25. For all the foregoing reasons, it is the conclusion of the Court that the filing of the Notice of Intent, and the refusal by the Creditor to thereafter release its Mechanic's Lien on the Debtor's property, did not constitute slander of title, malicious prosecution, or abuse of process.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Debtor's Complaint be, and hereby is, GRANTED IN PART and DENIED IN PART. Count I of the Debtor's Complaint is hereby GRANTED, and the Creditor's Mechanic's Lien on the Five Waterford Lots is hereby DECLARED to be invalid. The Creditor is ORDERED to file a release of the lien in the Office of the Recorder of Marion County within 12 days of the date of this Entry. Counts II, III, and IV of the Debtor's Complaint are hereby DENIED. The Creditor's motion to dismiss made at trial is hereby DENIED as it relates to Count I of the Debtor's Complaint. The Court hereby GRANTS judgment in favor of the Creditor as to Counts II, III, and IV of the Complaint.

ciding the Premier case. In Premier, the Indiana Court of Appeals held that the developer's labor was protected by the Mechanic's Lien Statute.

> In the instant case, the parties stipulated that Premier's duties as developer included locating the site, developing plans, specifications, and budgets, and supervising construction, as well as equipping, staffing and opening the hotel. It is *obvious* that such not only includes the supervisory duties which Indiana courts have held are lienable under the statute, but also includes other duties which would constitute 'labor' as that term has been construed.

*Premier Investments,* 630 N.E.2d at 237 (Ind.App.1994)(emphasis added).

What was *obvious* to Judge Sullivan in the Court of Appeals decision, was not so obvious to the Supreme Court in its decision. The Supreme Court held that the work performed by the developer did not constitute "labor", and was *not* protected by the Mechanic's Lien Statute. *Premier Investments,* 644 N.E.2d at 130 (Ind.1994).