No. 10,517.

## THOMAS ET AL. *v.* SIMMONS.

MORTGAGE.—*Merger.*—*Assignment of Decree.*—*Execution Over for Balance After Sale.*—Where a junior mortgagee, after obtaining a decree of foreclosure and a personal judgment with right to execution over for any balance after sale, receives a sheriff's deed as assignee of the certificate of sale under a senior mortgage, and then conveys the land by warranty deed to a third person, his decree, in the absence of any intervening equities, merges in the title so derived; and, there having been no sale thereunder, and hence no ascertained balance, execution could not, under section 634 of the code of 1852, be had against other property of the mortgagor, either in favor of himself or one who took it by assignment after the merger became complete.

INJUNCTION.—*Will Lie to Prevent Cloud Being Cast Upon Title.*—The owner of real estate may, by injunction, prevent a cloud being cast upon his title.

APPEAL.—*Costs.*—One who resists the granting of a new trial, and takes a final decree upon a defective finding of facts and erroneous conclusions of law, will, on appeal by the other party, be taxed with the costs of the same, although on such appeal he is adjudged to be entitled to a greater relief than that granted below.

SUPREME COURT.—*Reversal Upon Cross Errors.*—A judgment will not be reversed upon cross errors where the appellee insists upon an affirmance.

From the Hancock Circuit Court.

*J. A. New, J. W. Jones* and *J. H. Mellett,* for appellants.
*W. R. Hough* and *L. H. Reynolds,* for appellee.

NIBLACK, J.—Complaint, in seven paragraphs, by Noah D. Simmons against Lucian B. Thomas, Israel P. Poulson and William H. Thompson, sheriff of Hancock county, for an injunction. Demurrers were sustained to the first, third, fourth and seventh, and overruled as to the second, fifth and sixth paragraphs.

The second paragraph charged that one Marion Forgey was, on the 9th day of November, 1876, the owner of several tracts of land in Hancock county, containing in the aggregate one hundred and sixty-nine acres; that on that day he, with his wife, Mary F. Forgey, executed a mortgage upon those tracts of land to the administrator of the estate of Wil-

liam S. Wood, deceased, to secure the payment of two prom-
issory notes given by him, the said Marion, the first for the
sum of $2,885.03, payable three hundred and sixty-five days
after date, and the second for a like sum, payable eighteen
months after date; that said administrator thereupon assigned
and transferred the first of these notes to one William R.
Hough, and the second note to the defendant Poulson; that
when the first note became due Hough brought suit in the
Hancock Circuit Court to foreclose the mortgage given to se-
cure it, making Forgey and wife and Poulson defendants, and
obtained judgment for $2,920.10, and a decree foreclosing the
mortgage and ordering a sale of the mortgaged lands; that
Hough thereafter, that is to say, on the 18th day of February,
1878, became the purchaser of all such lands at sheriff's sale
under his decree, and received the sheriff's certificate of his
purchase; that on the 6th day of June, 1878, Poulson, by
proper proceedings against Forgey and wife and others in
the Hancock Circuit Court, recovered a personal judgment
against Forgey upon the second note for $3,150.13, and took
a junior decree of foreclosure of the mortgage, executed as
herein above stated, with an order for execution against the
other property of Forgey for any balance which might re-
main unpaid after the mortgaged lands should be exhausted;
that, on the 5th day of August, 1878, Poulson paid to Hough
the amount of money necessary to redeem the mortgaged
lands from the sheriff's sale under the latter's decree, and re-
ceived from Hough an assignment of the sheriff's certificate
of purchase issued to him as above averred; that, on the 22d
day of February, 1879, Poulson received a deed of convey-
ance for the mortgaged lands from the sheriff of Hancock
county upon the certificate of purchase as the assignee of
Hough; that on the 16th day of December, 1879, Poulson
sold, conveyed and warranted a part of the lands thus con-
veyed to him by the sheriff to the above named Mary F.
Forgey, and on the 3d day of January, 1880, in like man-
ner, sold, conveyed and warranted the rest or remainder of

such lands to one Calpurna Moore; that without ever having taken out execution upon his decree of foreclosure against Forgey and wife and others, rendered as above, Poulson, on the 21st day of March, 1881, assigned said decree to the defendant Thomas.

The second paragraph of the complaint further charged that, on the 10th day of May, 1877, Marion Forgey was the owner of several small tracts of land other than those mortgaged as above to the administrator of Woods' estate, and that, on that day, he, without the concurrence of his wife, mortgaged such other lands to Simmons, the plaintiff, to secure the payment of a promissory note for the sum of $3,-414.71; that at the time of making this mortgage the real estate covered by it was unencumbered except by a judgment in favor of the First National Bank of Cambridge City for $2,235.94; that, on the 16th day of November, 1878, Forgey, the mortgagor, was, upon his own petition, adjudged a bankrupt, and at a sale of his real estate by his assignee, his wife, Mary F. Forgey, became the purchaser of his interest in the lands mortgaged to Simmons subject to the lien of the bank judgment and to the Simmons mortgage; that afterwards, on the 23d day of January, 1880, the said Mary F. Forgey, in consideration of a promissory note for $1,353.33, payable two years from date, and the further sum of $1,803.15, paid by him on the bank judgment, conveyed to Simmons her entire estate in the lands embraced in his mortgage, she, at the same time, paying the balance which remained due on such judgment; that the plaintiff, desiring to sell the real estate thus conveyed to him, and believing that all liens upon it except his own had been discharged, entered satisfaction of his mortgage upon the margin of the record upon which it was recorded; that, on the 24th day of March, 1881, the defendant Thomas caused a certified copy of the decree of foreclosure, assigned to him by Poulson, to be made out, as well as an ordinary execution to be issued upon the same, and directed to the defendant Thompson as

sheriff of Hancock county, who, by virtue of such certified copy of the decree as well as said execution, levied upon the lands first mortgaged to the plaintiff and afterwards purchased by him of Mary F. Forgey, and advertised the same for sale to satisfy said decree of foreclosure. Wherefore the plaintiff charged that said decree of foreclosure had been merged in the higher title derived by Poulson through the sheriff's deed under the decree in favor of Hough, and demanded that the defendants be enjoined and inhibited from selling the lands so levied upon to satisfy said decree; that in the event the defendants might not be so enjoined and inhibited, then that the plaintiff be subrogated to the rights of the bank in the bank judgment to the amount paid by him on such judgment, and that his mortgage on the lands in controversy be decreed to be a subsisting and unsatisfied lien upon said lands, and that he might have all other proper relief.

This paragraph contained other averments and other specific demands for relief, but the view we have taken of this case renders it unnecessary that we shall particularly refer to such other averments and other demands for relief.

The fifth and sixth paragraphs of the complaint were not so elaborate as the second, but they in effect severally charged that the plaintiff was the owner of the real estate levied upon by the sheriff and prayed that the defendants might be enjoined and inhibited from selling such real estate upon any process issued upon the Poulson decree.

Questions were reserved upon some of the subsequent pleadings, but not regarding any of the questions thus reserved as of any practical importance at the present hearing, we do not further refer to them.

As regards the subsequent pleadings, which included answers and replies, it is sufficient to say that issue was joined upon the second, fifth and sixth paragraphs of the complaint. The court, after hearing the evidence, made a special finding of facts from which certain conclusions of law were drawn.

Over exceptions to the conclusions of law, and over a mo-

tion for a new trial, it was, amongst other things, adjudged and decreed that the defendants be enjoined and inhibited from selling one undivided third part of the lands levied upon under the Poulson decree, and that, as against the remaining two-thirds of said lands, the plaintiff be subrogated to all the rights of the First National Bank of Cambridge City, to the extent paid by him, in its judgment against Marion Forgey and others, mentioned in the complaint, and that his mortgage upon said lands be declared and held to be a subsisting and undischarged lien upon the same.

The first question argued, which we deem it necessary to notice, involves the sufficiency of the second paragraph of the complaint, and the question of its sufficiency depends upon the construction which ought to be given to the Poulson decree of foreclosure and to the conduct of Poulson in purchasing Hough's superior interest in, and inchoate title to, the mortgaged lands, and in selling and conveying those lands to other persons.

The Poulson decree was rendered under the authority of section 634 of the code of 1852, which was in force at the time, and which was as follows : " When there is an express written agreement for the payment of the sum of money secured, contained in the mortgage, or any separate instrument, the court shall direct in the order of sale that the balance due on the mortgage and costs which may remain unsatisfied after the sale of the mortgaged premises, shall be levied of any property of the mortgage debtor." 2 R. S. 1876, p. 262 ; R. S. 1881, section 1097.

Freeman on Execution, at section 10, referring to similar decrees, says : " In some instances, decrees direct the sale of certain property, and make the defendant responsible for the deficiency remaining after the proceeds of the sale have been applied to the payment of the plaintiff's demand.   In such cases, the amount to be paid by defendant is uncertain and contingent; and, therefore, no execution can issue against him until the sale has been completed and the deficiency ascer-

tained." *Bank of Rochester* v. *Emerson,* 10 Paige, 115; *Cobb* v. *Thornton,* 8 Howard Pr. 66.

This statement of the law by Freeman affords a fair and natural construction of all that class of decrees specially authorized by the section of the code of 1852, above set out, and hence has a practical application to the decree rendered in favor of Poulson. Neither Poulson nor Thomas was, consequently, entitled to levy upon, or have execution against, other property of Marion Forgey until the mortgaged lands were exhausted by a judicial sale, and a deficiency was in that way ascertained.

On the subject of merger, Boone on Mortgages aptly states the doctrine to be that, "At law, whenever a greater, estate and a less estate meet and coincide in one and the same person, in one and the same right, without any intermediate estate, the less estate is immediately annihilated, or is said to be merged. As applied to mortgages, the general rule is, that a merger takes place only when the whole title, equitable as well as legal, unites in the same person. The reason of the rule is, that when the entire equitable and legal estates are united in the same person, there can be no occasion to keep them distinct, for ordinarily it could be of no use to the owner to keep up a charge upon an estate of which he was seized in fee simple; but if there is an outstanding, intervening title, the foundation for the merger does not exist, and the merger does not take place."

The same author further states the true test of merger to be the intent of the parties, either as expressed by some specific agreement or as implied from all the circumstances attending the transaction, and adds that, "As a general rule, a mortgage which has been substantially satisfied by payment is extinguished. And although equity will sometimes keep alive a mortgage which has been substantially satisfied, yet, whenever this is done, it is for the advancement of justice, and never to aid in the perpetration of a fraud through the forms of law. A sum of money received by the creditor upon

the land and mortgage, if intended and declared to apply on the instrument, at the time, in total or partial satisfaction thereof, will have that effect; and no subsequent change of intent by the debtor can retroact, or renew the security, without the consent of the parties interested, and without prejudice to third persons. * * * When the equity of redemption is purchased by the mortgagee, the general rule is, that the mortgage will be regarded as extinguished, whenever it would be inequitable, or contrary to the clear intention of the parties, or conducive to fraud, to consider it as still subsisting. Conveyance by a mortgagee in possession, after default, merges the mortgage." See sections 141, 142, 143. See, also, Jones Mort., section 870; *Elston* v. *Castor*, 101 Ind. 426.

This doctrine of merger, as applied to a mortgage, is based upon the theory that when the mortgagee has acquired title in fee simple, he has appropriated to his exclusive use the fund or property accepted by him, or those under whom he claims, as security for the payment of the mortgage debt, and that the debt has thereby become presumptively satisfied. This presumptive satisfaction may, as above intimated, be overcome by proof of an express agreement to the contrary, or of facts and circumstances inconsistent with it.

When Poulson obtained an assignment of the sheriff's certificate from Hough one of two ways was open to him. One was to treat his seeming purchase of the certificate as a practical redemption of the mortgaged lands from the sale to Hough and proceed to sell those lands under his own decree with a view to testing their sufficiency to pay the personal judgment against Marion Forgey contained in the decree, and the other was to wait until the time for redemption from the sale under Hough's decree expired, and then receive and rely upon a sheriff's deed as a complete title in fee simple without reference to any claim under his own decree. He seems to have adopted the latter course, and that afforded *prima facie* evidence, at least, of a merger of his decree in

the greater estate acquired through Hough. But he went further and consummated an absolute and unquestionable merger of his decree by conveying away the lands with covenants of warranty to other persons. These conveyances precluded him, if he was not already so precluded, from asserting any anterior lien against the land. Being so precluded, his assignment of his decree to Thomas, made afterwards, carried with it nothing of value to the latter. It was then too late to have the mortgaged lands again sold on the the Poulson decree, and hence the right to have execution against other property of Marion Forgey could never accrue. The circuit court did not, therefore, err in overruling the demurrer to the second paragraph of the complaint.

There is a conflict in the authorities as to the right of the owner of real estate to have an injunction to prevent a cloud being cast upon his title, but in this State the right to have an injunction for such a purpose is fully recognized. *Bishop* v. *Moorman*, 98 Ind. 1 (49 Am. R. 731); *Petry* v. *Ambrosher*, 100 Ind. 510.

Upon the authority of our cases sustaining that right, we regard the fifth and sixth paragraphs of the complaint as having also been sufficient upon demurrer.

The facts, as specially found by the circuit court, were, in their main features, in general accordance with those averred in the second paragraph of the complaint, but in one essential respect the facts were not as fully found as they were averred in the paragraph of the complaint in question, and as they were apparently established by the evidence, and that was in not finding that Poulson conveyed away the lands embraced in his decree of foreclosure to other persons before assigning the decree to Thomas.

Some of the conclusions of law were favorable to the plaintiff and others were adverse to his claim to full relief. Taking all of them together, they placed the case before the circuit court in a very imperfect and unsatisfactory condition

as the basis of a full, final and proper decree on the merits of the cause. One of the conclusions, drawn by the court, was to the effect that the plaintiff was entitled to be subrogated to certain rights, as herein above at length stated, in the judgment held by the First National Bank of Cambridge City against Marion Forgey and others, and that the mortgage executed by the said Forgey to the plaintiff ought to be reinstated and declared to be in force as a continuing lien.

Such subrogations and reinstatements of liens are only decreed when necessary to promote the ends of justice, and the evidence having, as we believe, shown the plaintiff to be entitled to higher relief, and relief of a different character, the conclusion of law in question was erroneous. The error, too, was one of which the defendants had the technical right, at least, to complain, as it led to an erroneous decree in some respects against them.

We would remand the cause, with instructions to state new conclusions of law upon the special finding of facts, if we felt assured that the facts had been fully found by the circuit court, but, not feeling so assured, we think the case can more surely be placed upon a proper footing by a reversal of the judgment and by being remanded for a new trial. As the plaintiff resisted the granting of a new trial below and took the final decree appealed from upon a defective finding of facts, as well as upon erroneous conclusions of law, our inference is that he ought to be taxed with the costs of this appeal.

The judgment is reversed, at the costs of the appellee, and the cause remanded for a new trial.

Filed Sept. 15, 1885.

## ON PETITION FOR A REHEARING.

NIBLACK, J.—One of the grounds of complaint preferred by a petition for a rehearing is, that we did not make specific rulings upon certain cross errors assigned by the appellee, and another is, that if the judgment ought to have been re-

versed, it should have been so ordered upon the cross errors assigned as above stated.

Cross error is assigned primarily to prevent a reversal of the judgment by showing that whatever error, abstractly considered, may have been committed against the appellant during the progress of the cause, he has still no reason to complain of the ultimate decision against him from which he appeals, and secondarily, in the event that the judgment shall be reversed, that the appellee may obtain a ruling of this court upon the question or questions intermediately decided against him, for the guidance of the court below after the cause shall be remanded. Buskirk Pr. 119.

When such error has intervened as induces the appellee to believe either that the judgment ought to be, or will be, reversed, it is competent for him to confess error, and thus to cause, without delay, a reversal of the judgment, but no case has been cited, and we know of none, in which a judgment has been reversed upon cross error, where, as in this case, the appellee insisted upon an affirmance of the judgment.

In this case all the material questions presented by the assignment of cross errors were in legal effect passed upon either directly or inferentially by the arguments and illustrations used in, or the conclusions reached by, the original opinion. Hence no injustice was done to the appellee by not specifically noticing his assignment of cross errors.

Other grounds of complaint are urged against the original opinion, but they present nothing that was not substantially considered at the former hearing.

The petition for a rehearing is overruled.

Filed Nov. 21, 1885.