PCL/CALUMET, A Joint Venture,
Appellant–Plaintiff,

v.

ENTERCITEMENT, LLC, Board of Trustees of the Policemen and Firemen Retirement System of the City of Detroit, Excel Legacy Corporation, Ermco, Inc., Rod Busters, Inc., and Woolpert, LLP, Appellees–Defendants.

No. 32A01–0011–CV–376.

Court of Appeals of Indiana.

Dec. 21, 2001.

Bryce H. Bennett, Jr., Michael Patrick Dugan, James M. Shafer, Riley Bennett & Egloff, LLP, Indianapolis, IN, Attorneys for Appellant.

Michael A. Trentadue, V. Samuel Laurin, III, Bryan H. Babb, Bose McKinney & Evans LLP, A. Donald Wiles, II, Harrison & Moberly Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

PCL/Calumet, A Joint Venture ("PCL/Calumet") appeals the en banc decision of trial courts in Hendricks and Morgan counties granting summary judgment in favor of the Board of Trustees of the Policemen and Firemen Retirement System of the City of Detroit ("Detroit") and Excel Legacy Corporation ("Excel"). The trial courts held that Detroit and Excel's

mortgage on EnterCitement, LLC's ("EnterCitement") theme park development site has priority over PCL/Calumet's mechanic's lien on the same site. PCL/Calumet presents three issues for our review, which we restate as:

I. Whether the trial court erred when it held that PCL/Calumet's mechanic's lien did not relate back to the date when labor or materials were originally supplied to the project by a different contractor.

II. Whether the trial court erred when it held that EnterCitement's fee simple and Detroit and Excel's mortgage interest did not merge.

III. Whether the doctrine of equitable subordination applies to subordinate Detroit and Excel's mortgage to PCL/Calumet's mechanic's lien.

In addition to PCL/Calumet's three issues, Detroit and Excel request that we remand this case to the trial court to award Detroit and Excel appellate attorneys' fees and costs.

We affirm in part and remand in part.

## Facts and Procedural History

The facts most favorable to the trial courts' judgment reveal that EnterCitement, an Indiana domestic limited liability company, was organized for the purpose of owning and operating an amusement park, to be known as Heartland Theme Park, in Hendricks and Morgan Counties. EnterCitement was composed of several entities, including Detroit and Excel. In 1994, EnterCitement purchased a 510–acre tract of land that was to be the site of the theme park. Work began on the theme park in 1996 when EnterCitement entered a contract with Manhattan Construction ("Manhattan"), a general contractor. In May 1997, all obligations under the Manhattan–EnterCitement contract were complete and fully paid and the contract was concluded.

Six months later, in November 1997, Kennedy Funding, Inc. ("Kennedy") loaned EnterCitement $2,000,000.00 and EnterCitement executed a promissory note in Kennedy's favor. As security for the loan, Kennedy simultaneously obtained and recorded a mortgage on the property. Kennedy recorded the mortgage in Hendricks County on November 7, 1997, and in Morgan County on November 13, 1997.

In June 1998, over one year after the Manhattan–EnterCitement contract concluded and eight months after Kennedy's mortgage was recorded, EnterCitement entered into a contract with PCL/Calumet, a general contractor, to continue the work that ended in May 1997. Approximately five months later, on October 23, 1998, PCL/Calumet sent a notice to EnterCitement terminating the PCL/Calumet–EnterCitement contract due to non-payment. Then on November 10, 1998, PCL/Calumet sent a letter to EnterCitement acknowledging that even though their contract was terminated, PCL/Calumet chose to remain on-site per a subsequent agreement with EnterCitement. The letter contained a list of costs PCL/Calumet incurred since the termination, and stated that payment for such costs would be due thirty days from invoice. On December 4, 1998, within sixty days of the last time PCL/Calumet supplied labor or materials to the project, PCL/Calumet filed a Notice of Intention to Hold Mechanic's Lien on EnterCitement's real estate with the Hendricks County Recorder's Office, in the amount of $6,061,521.00.

On January 22, 1999, Kennedy assigned EnterCitement's promissory note and mortgage to Detroit, which was acting as an agent for the following lenders: Detroit itself, Indiana Electrical Workers Pension Trust Fund ("Indiana Electrical Work-

ers"), and Indiana Carpenters Pension Trust Fund ("Indiana Carpenters"). Detroit paid Kennedy $2,029,333.33 for the note, which included the outstanding principal, all accrued and unpaid interest, and other charges. Detroit loaned EnterCitement an additional $475,000 and made the following relevant modifications to the mortgage: the loan amount was increased from $2,000,000.00 to $2,504,333.33; the interest became due when the principal was due, rather than monthly; and, the lender list was revised to reflect the new lenders. On February 18, 1999, Detroit assigned a partial interest in the note and mortgage to Excel, which was acting as an agent for the following lenders: Detroit itself, Excel itself, Indiana Electrical Workers, and Indiana Carpenters.

PCL/Calumet filed its complaint on October 22, 1999, seeking foreclosure on the mechanic's lien, breach of contract, account stated, and unjust enrichment, and requesting not less than $6,466,381.00, interest, attorneys' fees, and costs. On May 11, 2000, PCL/Calumet and EnterCitement entered an Offer, Acceptance and Entry of Judgment pursuant to Indiana Trial Rule 68, for $7,050,000.00, payable by EnterCitement to PCL/Calumet. The judgment deemed PCL/Calumet's mechanic's lien valid and enforceable, it ordered the lien foreclosed, and in the event EnterCitement did not satisfy the judgment, it ordered that the property be sold. However, several issues, including priority, were left unresolved and pending before the trial court.

On September 29, 2000, pursuant to various summary judgment motions and cross motions, and after a hearing on August 25, 2000, the trial courts entered findings and judgment on the issue of priority. The courts found that the priority date of PCL/Calumet's mechanic's lien was June 1998, when PCL/Calumet began work under its contract with EnterCitement, and that PCL/Calumet's lien did not relate back to when Manhattan began work on the project in 1996. The courts also found that Detroit and Excel's mortgage priority date was November 1997 under Kennedy's assignment of its mortgage to Detroit and Excel, the date when Kennedy's mortgage was first recorded. The courts therefore held that all liens created after November 1997, including PCL/Calumet's mechanic's lien, are secondary to Detroit and Excel's mortgage.

On October 28, 2000, as contemplated by the September 29, 2000 judgment, the trial courts entered Summary Judgment and Order of Sale, incorporating the September 29 findings and judgment, and including findings setting forth each party's interest in the property and priority status, and ordering a sheriff's sale. PCL/Calumet now appeals. Additional facts will be provided as necessary.

## Standard of Review

When reviewing a trial court's summary judgment determination, we apply the same standard applicable in the trial court. *Webb v. Jarvis*, 575 N.E.2d 992, 994 (Ind.1991). Summary judgment is a procedural means to halt litigation when there are no factual disputes and to allow the case to be determined as a matter of law. *LeBrun v. Conner*, 702 N.E.2d 754, 756 (Ind.Ct.App.1998). Summary judgment is appropriate only if there is no evidence of a genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Aide v. Chrysler Fin. Corp.*, 699 N.E.2d 1177, 1180 (Ind.Ct.App.1998), *trans. denied.* Because "[t]he material facts surrounding the construction and financing of the Theme Park Project are not in dispute," Br. of Appellant p. 9, "the propriety of summary judgment [is] solely a question of law for the court." *Grey-*

*hound Fin. Corp. v. R.L.C., Inc.,* 637 N.E.2d 1325, 1326 (Ind.Ct.App.1994) (citations omitted).

## I. Mechanic's Lien

 PCL/Calumet argues that the priority date for its mechanic's lien, filed December 4, 1998, relates back to the date when labor and materials were first supplied to EnterCitement by Manhattan in 1996. "A mechanic's lien was a remedy unknown at common law and is purely a statutory creation." *Premier Invs. v. Suites of Am. Inc.,* 644 N.E.2d 124, 127 (Ind.1994) (internal footnote omitted) (citing *Potter Mfg. Co. v. A.B. Meyer & Co.,* 171 Ind. 513, 516, 86 N.E. 837, 838 (1909)). Because mechanic's liens were created in derogation of common law, they are to be narrowly construed. *Id.* (citing *Puritan Eng'g Corp. v. Robinson,* 207 Ind. 58, 60, 191 N.E. 141, 142 (1934)). The Indiana Mechanic's Lien statute in effect at the time PCL/Calumet filed its notice of mechanic's lien reads in relevant part:

> All liens so created shall relate to the time when the mechanic or other person began to perform the labor or furnish the materials or machinery, and shall have priority over all liens suffered or created thereafter, except the liens of other mechanics and materialmen, as to which there shall be no priority.

Ind.Code § 32–8–3–5 (1998) (current version at Ind.Code § 32–8–3–5 (Supp.2000)).

 A valid mechanic's lien requires "the existence of a debt which, under the statute, it secures" and "[t]he debt must arise out of contract, express or implied." *Mann v. Schnarr,* 228 Ind. 654, 662, 95 N.E.2d 138, 141 (1950) (citation omitted). The purpose of mechanic's lien statutes is "to make a property owner an involuntary guarantor of payments for the reasonable value of improvements made to real estate by the physical labor or materials furnished by laborers or materialmen." *Premier Invs.,* 644 N.E.2d at 130 (citation omitted). The statutes therefore prevent the inequitable result of property owners benefiting from labor and materials "furnished by others without recompense." *Id.* (citations omitted).

 PCL/Calumet contends that the priority date for its mechanic's lien should be 1996, when Manhattan began work at the site, because it argues that under Indiana law, the key to relation back of a lien priority date is continuity, which requires only three things: 1) one owner; 2) one piece of property; and, 3) one scope of work. PCL/Calumet argues that relation back is appropriate here because there is one owner of the subject property (Enter-Citement); one piece of property (the 510 acres); and one scope of work (constructing a theme park). PCL/Calumet neglects to direct this court to any statute or common law precedent supporting this contention, and we can find none. Br. of Appellant p. 12–14.

 PCL/Calumet's argument also ignores the plain language of the mechanic's lien statute, which reads in relevant part: "All liens so created shall relate to the time when *the* mechanic or other person began to perform *the* labor or furnish *the* materials or machinery...." Ind.Code § 32–8–3–5 (1998) (emphasis added) (current version at Ind.Code § 32–8–3–5 (Supp.2000)). When a statute is unambiguous, we do not look beyond its plain language to determine the meaning, nor do we resort to other rules of statutory construction. *Pub. Employees' Ret. Fund v. Shepherd,* 733 N.E.2d 987, 989 (Ind.Ct. App.2000), *trans. denied.* We are not free to construe an unambiguous statute; rather, "our ability to effect perceived legislative purposes is necessarily limited to the language of the statute." *Office of Util.*

*Consumer Counselor v. Pub. Serv. Co. of Ind., Inc.*, 608 N.E.2d 1362, 1363–64 (Ind. 1993). We believe that use of the article "the" before "mechanic or other person," "labor," and "materials or machinery," unambiguously refers to the specific mechanic or other person that installed the labor and/or materials for which the mechanic's lien is claimed. Because the statute is unambiguous, we do not find PCL/Calumet's argument that the statute refers to any mechanic or other person who performed any work under any contract to be persuasive.

Moreover, PCL/Calumet's argument fails to acknowledge that in Indiana, a mechanic's lien can only relate back to such time when work under that specific lien began. In *Zehner v. Johnston*, 22 Ind.App. 452, 53 N.E. 1080 (1899), the Indiana Appellate Court held: "The lien of a mechanic, under our statute, relates to the time when the work for which the lien is claimed was commenced, or to when the first material for which the lien is claimed was furnished." *Id.* at 458, 53 N.E. at 1082. Therefore, the priority date of PCL/Calumet's mechanic's lien can only be when PCL/Calumet itself started supplying the labor or materials for which its lien is claimed, some time after June 1998, when the PCL/Calumet–EnterCitement contract was created.[1] We therefore find that the trial court did not err when it found that PCL/Calumet's mechanic's lien did not relate back to when Manhattan originally supplied labor or materials to the project.[2]

---

**1.** It is also important to note that when the Manhattan–EnterCitement contract concluded in May of 1997, Manhattan was fully paid. Manhattan itself would not have been able to timely claim a mechanic's lien against EnterCitement under its own contract.

**2.** We find no reported Indiana cases in which mechanics or materialmen have sought or

## II. Merger of Fee Simple and Mortgage Interests

PCL/Calumet alternatively argues that even if the priority date of its mechanic's lien is June 1998, it still has priority over Detroit and Excel's mortgage lien because the fee simple and mortgage estates merged after the Kennedy mortgage was assigned. "[W]henever a greater estate and a less meet and coincide in one and the same person, in one and the same right, without any intermediate estate, the less estate is immediately annihilated, or is said to be merged." *Thomas v. Simmons*, 103 Ind. 538, 543, 2 N.E. 203, 206 (1885) (citation omitted). Specifically, PCL/Calumet argues that a merger took place because after Kennedy's assignment of the mortgage, 100% of the mortgagees owned 90.2% of EnterCitement, the mortgagor. PCL/Calumet argues that the effect of the alleged merger is that Detroit and Excel's priority date became January 1999, the date of Detroit's mortgage, when the estates allegedly merged, rather than November 1997, when the mortgage was originally recorded.

The priority date for a mortgage is the date it is properly filed in the recorder's office in the county in which the property is located. Ind.Code § 32–1–2–16 (1998). The general rule as to merger "is that a merger takes place only when the *whole* title, equitable as well as legal, unites in the same person." *Thomas*, 103 Ind. at 543, 2 N.E. at 206 (citation omitted) (emphasis added). *See also, Ellsworth v. Homemakers Fin. Srvc., Inc.*, 424 N.E.2d

have been allowed to establish priority according to a date other than the date upon which the specific mechanic or materialman himself provided labor or materials on a construction project. We further cannot determine any persuasive legal authority or public policy reason to change this long-assumed, common sense relationship.

166, 168 (Ind.Ct.App.1981) (holding that when a mortgagee acquires fee simple title, the mortgage and legal titles merge, vesting the mortgagee with complete title and extinguishing the mortgage) (citations omitted). "The reason of the rule is, that when the entire equitable and legal estates are united in the same person, there can be no occasion to keep them distinct, for ordinarily it could be of no use to the owner to keep up a charge upon *an estate of which he has seized in fee simple....*" *Thomas,* 103 Ind. at 543, 2 N.E. at 206 (emphasis added).

■ PCL/Calumet argues that it is enough that the mortgage was assigned to the same entities that own 90.2% of EnterCitement, who also vote a controlling majority on EnterCitement's Management Committee. We do not agree. For a merger to occur, the equitable and legal estates must unite in the *same* person. A merger does not occur when the two estates are owned by substantially the same entities.[3]

In this regard, it is important to note that the Kennedy mortgage assignment to Detroit and Excel was supported by more than $2,500,000.00 of consideration and that PCL/Calumet had at least constructive notice of the Kennedy mortgage and its assignment and future advance provisions. PCL/Calumet does not dispute either of these two important facts. If there had been no assignment, there is no question that Kennedy's mortgage, including possible, subsequent advances, would be superior to PCL/Calumet's mechanic's lien. Because there was adequate consideration for the assignment, the mortgage remains superior to the mechanic's lien.

Nonetheless, PCL/Calumet relies heavily on our supreme court's decision in *Pre-*

*mier Investments v. Suites of America, Inc.,* 644 N.E.2d 124 (Ind.1994), for its argument that EnterCitement, as real estate owner, and Detroit and Excel, as mortgagees, are the same entities. In *Premier Investments,* the court held that under the statutory and historical origin of mechanic's lien law, a developer with equity in a project was not entitled to a mechanic's lien for providing real estate development services to the project in a supervisory capacity, and was not a contractor as defined in the mechanic's lien statutes. *Id.* at 127–30. The court also held that the "developer's equity participation [in the project] place[d] it on the owner's side of the line" and to grant the developer a mechanic's lien would "conflict[ ] with the core function of mechanic's lien statutes' providing a method for contractors, subcontractors, laborers, and materialmen who have increased the value of a property owner's land and not been paid to obtain enumeration." *Id.* at 130–31.

We find *Premier Investments* distinguishable from our case. The holding in *Premier Investments* is focused on the issue of whether a developer who was also an equity participant in ownership of the project was entitled to hold a mechanic's lien, not whether mortgagees who are also part owners of the mortgaged real estate are to be considered the same entity for merger purposes. The court's discussion of the developer's role as an equity participant supported its ruling that the developer was not entitled to hold a mechanic's lien, and nothing more. We find that the trial court did not err when it found that the legal and equitable estates did not merge.

### III. Equitable Subordination

■ PCL/Calumet next argues that this court should apply the bankruptcy

---

**3.** Because we find that the fee simple and mortgage estates did not merge, we do not

reach PCL/Calumet's argument that equity will not prevent a merger.

doctrine of equitable subordination to subordinate Detroit and Excel's mortgage lien to PCL/Calumet's mechanic's lien. Equitable subordination is designed to give courts the authority to relegate secured creditors to a lower tiered status in a bankruptcy proceeding in order to preserve state-law rights of claimants. *In re Lifschultz Fast Freight*, 132 F.3d 339, 342–43 (7th Cir.1997). As recognized by a panel of this court, reliance on this doctrine in a priority dispute unrelated to a bankruptcy proceeding is unwarranted because all three of the conditions that must be met in order for the doctrine to apply "hinge in great part upon the Bankruptcy Code itself." *First Bank of Whiting v. Samocki Bros. Trucking Co.*, 509 N.E.2d 187, 197–98 (Ind.Ct.App.1987) (citing *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir.1977)).[4] Because this is not a bankruptcy proceeding, like the *First Bank of Whiting* court, we find that "we can ignore these arguments of the parties and address the law as we have found it to be." *Id.* at 198.

PCL/Calumet entered a contract with EnterCitement approximately eight months after Kennedy recorded its mortgage on EnterCitement's property. Kennedy was free to assign the mortgage and increase the loan amount under the future advances clause up to $4,000,000.00. R. at 307–08. Kennedy later assigned the mortgage to Detroit in January 1999, who in turn made a partial assignment to Excel. The mortgage amount was thereafter increased to $2,504,333.33 and the due date for accruing interest was revised. The original, recorded mortgage authorized the assignment and the term revisions made.

This is not a case where the lien holder did not and/or could not know of an existing mortgage and its terms, or where a mortgagee attempted to hide relevant information from an intervening lien holder.

Detroit and Excel's actions were also not inconsistent with the statutes governing limited liability companies and their members. EnterCitement is a limited liability company whose "member[s] or manager[s] may lend money to and transact other business with the limited liability company and, subject to other applicable law, has the same rights and obligations with respect to the transaction as a person who is not a member or manager." Ind.Code § 23–18–4–12 (1998). Because we find that the bankruptcy doctrine of equitable subordination does not directly apply to this case and the mortgage and applicable statutes supported all of the actions taken by Detroit and Excel, we conclude that Detroit and Excel's mortgage is not subordinate to PCL/Calumet's mechanic's lien.

## IV. Appellate Attorneys' Fees and Costs

Lastly, Mortgagees Detroit and Excel request that we remand this case to the trial court to award Detroit and Excel appellate attorneys' fees and costs payable by mortgagor EnterCitement pursuant to Paragraph 29 of the mortgage, which reads:

29. *Expenses of Mortgagee.* All costs and expenses paid or incurred by the Mortgagee (including, without limitation, reasonable attorneys' fees and disbursements), in any action, proceeding or dispute of any kind in which the Mortgagee is made a party or appears

---

4. A court may only use the equitable subordination doctrine if the following are true: "1) The claimant must have engaged in some type of inequitable conduct[;] 2) [t]he misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant[;] 3) [e]quitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code]." *First Bank of Whiting*, 509 N.E.2d at 198 n. 6 (quoting *In re Mobile Steel Co.*, 563 F.2d at 700).

as party plaintiff or defendant, affecting or arising in connection with any of the Loan Documents, the Obligations, or the Property, including, but not limited to, the enforcement of this Mortgage, ... with interest thereon at the Default Rate from the time of payment by the Mortgagee, on demand, shall be immediately due from the Mortgager to the Mortgagee and shall be added to and included in the Obligations and shall be secured by this Mortgage.

R. at 324. This provision provides Detroit and Excel, the mortgagees, with a right to reasonable attorney fees from EnterCitement, the mortgagor, in any action in which Detroit and Excel are a party and that involves the loan documents, obligations, property, and/or the mortgage, even though EnterCitement is not a party to this appeal.

A panel of this court has held that "reasonable attorneys' fees" includes appellate fees. *Otto v. Park Garden Assocs.*, 612 N.E.2d 135, 143 (Ind.Ct.App.1993) (citing *Parrish v. Terre Haute Sav. Bank*, 438 N.E.2d 1, 3 (Ind.Ct.App.1982)). Because an award of attorneys' fees and costs are supported by the mortgage, we remand to the trial court for a determination of Detroit and Excel's appellate attorneys' fees and costs and order the trial court to add such amount onto the previously determined amount of Detroit and Excel's mortgage interest.

### Conclusion

We conclude that PCL/Calumet's mechanic's lien does not relate back to when Manhattan, a fully paid and unrelated contractor, first supplied labor or materials to EnterCitement's theme park development site. We also conclude there was no merger of the fee simple and mortgage estates, and that the bankruptcy doctrine of equitable subordination does not apply to subordinate Detroit and Excel's mortgage lien. We therefore affirm the trial court's determination that Detroit and Excel's mortgage has priority over PCL/Calumet's mechanic's lien. Additionally, we conclude that the award of appellate attorneys' fees and costs against EnterCitement are supported by the mortgage, and we remand to the trial court for determination of those fees.

Affirmed and remanded.

DARDEN, J., and VAIDIK, J., concur.